SAMUEL L. TILLINGHAST, Receiver, *v.* ROBERT CHAMPLIN
& others.

A court of equity is exceedingly reluctant to permit an amendment of an answer, as to
material facts, or to change the ground of defence, especially in a late stage of the
cause; but it will give such leave when the reasons are satisfactory, the facts to be
stated by way of amendment highly probable or certain and material to the controversy,
and when there has been no *gross* negligence, and the mistake has been ascertained
since the putting in of the answer.

In a proper case such leave may be granted by the rules of this court, even after the
cause has been set down for a hearing upon bill and answer.

BILL IN EQUITY. The bill in this case was filed March 13,
1855, and twice amended; once, on motion, at the September
term, 1855, and once, by consent, on the 21st April, 1856; the
consent, indorsed upon the amendment, stipulating, "that the
defendant shall be permitted to amend his answer if deemed
necessary."

The answer to the original bill was filed on the 13th March,
1856, and to the amended bill at the adjourned March term,
1856. Replication was filed, a commission taken out, proofs
on both sides taken, and notice of further proofs to be taken on
the part of the respondents given, when notice having been
given to that effect on the first day of the present term, on the
fourth day of the term a motion was made on the part of the
defendant, Robert H. Champlin, to amend his answer upon the
affidavits of himself and of Joseph M. Blake, Esq, his counsel,
the purport of which is sufficiently stated in the opinion of the
court. The bill was, in substance, a bill by Tillinghast, as re-
ceiver of Gardner & Co., or Gardner & Brother, against Benja-
min W. Gardner, the surviving partner of that firm, Robert H.
Champlin, administrator of William A. Gardner the deceased
copartner and Samuel A. Champlin, for an account of certain
copartnership property, consisting of the machinery of a planing
mill, lumber, &c., alleged by the bill to have come into the
hands of the administrator of the deceased copartner and to
have been sold by him at public auction to Samuel A. Champ-
lin; and to which the plaintiff alleged that he, as receiver of
the firm was entitled, to satisfy the copartnership debts.

The joint and several answers of the administrator, Robert H., and of the purchaser, Samuel A. Champlin, in substance admitted the copartnership, and that the property in question was copartnership property, and set forth an agreement between the administrator and the surviving partner, that one undivided half of the personal property of the firm, which had been inventoried as the personal property of the deceased copartner, should be sold by the administrator at auction, and that the purchaser should have the other undivided half from the surviving partner at the same price ; the administrator of the deceased copartner to pay one half of the debts of the firm, and the surviving partner the other half of the debts ; both supposing that this was the proper mode of settling the affairs of the copartnership ; that the sale was accordingly made to Samuel A. Champlin, as the highest bidder for the undivided half, supposed to be the property of the administrator of the deceased partner, and that Samuel paid the purchase-money to the administrator in good faith, knowing that the property was copartnership property, but supposing that the sale, thus made, was the only proper and legal mode of making sale of property thus situated ; and that he also bought the other undivided half of the same property, at the same rate, from the surviving partner, according to the above arrangement, and paid for the same to him. The answer in terms professed that " the said Robert H. Champlin, as such administrator is, and ever has been, ready to account with the creditors of the copartnership for all moneys by him received for goods and chattels belonging to said copartnership."

The amendment to the answer proposed to be made by Robert H. Champlin, the administrator, was in substance, " that after he, Robert, had collected the money-proceeds of the auction sale of the undivided half of the personal property of the firm of Gardner & Brother, he, at the request of the surety on his administration bond, deposited the same in the Rhode Island Exchange Bank to the credit of Gardner & Brother, who had an account open in their name in that bank ; that after this deposit he never claimed to exercise, nor did exercise, any control over the same, but believes that the same was subsequently checked out by Benjamin W. Gardner, the surviving partner,

who absconded with the same, leaving the debts of the firm unpaid, though without any knowledge on the part of the respondent that he intended so to do, at the time of the deposit made by him to the credit of the firm."

The motion was shortly argued by *Blake* for the respondent, Robert H. Champlin, and by *Cozzens* for the complainant.

Ames, C. J.   The motion made on the part of the defendant, Robert H. Champlin, is, that he be permitted to amend his answer in this material respect: that whereas, as it now stands, his answer admits that he is accountable to the complainant, as receiver of the late firm of Gardner & Brother, for the proceeds of the sale at auction of a portion of the property of that firm, he desires so to amend it, that it may discharge him from so accounting, by alleging a payment of the proceeds of said sale to Benjamin W. Gardner, the surviving partner of the firm, when entitled to receive such payment.   The grounds for this motion, in part disclosed in the affidavits of the respondent, on whose behalf the motion is made, and of Joseph M. Blake, Esq. his counsel, are, *first*, the written stipulation of April 21, 1856, that in consideration of the consent given by the defendants that the complainant should amend his bill, the defendants should have leave to amend their answer ; and *second*, the fact sworn to by Mr. Blake that he was so ill when he drew the answer, then due and called for by the counsel for the complainant, as to be wholly unfit for such work; that the answer drawn under such circumstances was handed directly to the counsel for the complainant, who kept it, so that it was not again seen by the affiant, until just before the commencement of this term ; and that, on the first day of the term, he gave notice of his motion to amend it in the important particular above stated. The objections made to the amendment are, that the stipulation related only to such amendments of the answer as were rendered necessary by the amendments to be made by consent to the bill,—the long delay to make it, and the fact that the amendment will change the whole aspect of the cause,—and that, too, at a very late stage of it, when the proofs, at least on the part of the complainant, have been taken, and the cause, as is contended, though not set down for, was, by the rules, ready for hearing.

The question is, whether the motion to make this amendment can, under such circumstances, be granted by us, consistently with the rules of practice given to or adopted by us, for our guidance as a court of equity, in the exercise in such a matter of our discretion?

It is certainly true, that when application is made to amend an answer as to material facts, or to change essentially the grounds of defence originally taken in it, courts of equity are exceedingly slow and reluctant in acceding to the amendment. The reason given is twofold; to permit it, has a natural tendency to encourage carelessness and indifference in making answers, and leaves much room for the introduction of testimony manufactured for the occasion. Per Story, J., *Smith* v. *Babcock*, 3 Sumn. 585, 586. The last reason operates with great force, when the motion, as here, is made in a late stage of the cause, and when, of course, the exigencies of it are fully seen as well by the respondent as by his solicitor. At the same time, it would be a reproach to a court of chancery if its rules were such as to strip it of authority to grant leave to file an amended answer, in cases where it can be safely done, and where the purposes of substantial justice require it; and the whole matter rests in the sound discretion of the court. Ibid. Under the circumstances of *Livesay* v. *Wilson*, 1 Ves. & Bea. 149, Lord Eldon allowed a defendant to a bill for a specific performance of a contract for the purchase of real estate, to amend his answer, by stating that he took possession of only *a part* of the estate *under the articles of sale*, although the answer admitted that, under them, he took possession of the whole; the fact being, as the respondent stated in his affidavit, that he was in possession, at the time of the contract, of the house, one part of the property purchased, as tenant of the vendor, and that the mistake arose from the respondent's ignorance of the difference, the truth of the matter not having been communicated by him to his solicitor. As the mistake alleged was not in matter of fact, but in matter of law, Lord Eldon was very unwilling to make the precedent of allowing it to be corrected, and did so, only on the condition that the respondent would tell him " on his oath, that, when he swore to his original answer, he

meant to swear in the sense which he now desires to be at liberty to swear to." In *Patterson* v. *Slaughter*, 1 Ambl. 291, Lord Hardwicke allowed the respondent,—the motion being made before replication filed,—to amend his answer by setting forth therein a newly discovered title to the real estate in question of the person under whom he claimed, not before alleged in the answer, so as to be capable of being proved; noticing *that the fact was not denied*, and that unless the amendment were permitted, the respondent could have no remedy; since, a bill of review with supplemental matter would relieve only where the new matter offered upon it went to prove *what was already in issue*, whereas, the new matter offered in the case before him, required to prove it, *a new issue to be made* by the answer. He noticed, further, that the title, which was that of a purchaser for valuable consideration, could not be availed of on a cross bill, for the double reason, that such a title though a good defence, was no ground for relief, and that the proofs in the cross cause could not be made use of in the original cause, the same matter not being in issue. Though "afraid," as he expressed it, "to give encouragement to applications of this kind," he allowed the amendment, as the only remedy which could avail the party under the circumstances of his case. That an admission in an answer by mistake cannot be remedied by a cross bill, but only by amendment of the original answer, see also, *Berkley* v. *Ryder*, 2 Ves. senior, 537. A defendant has been allowed also to amend his answer to a bill for the specific performance of a contract for the sale of an estate made by him, after having submitted in his answer to perform his contract, by setting up in his answer a surprise in the sale; he having newly discovered that in ignorance he had sold the estate at several thousands pounds under value; *Alpha* v. *Payman*, 1 Dick. 33; and in another case, nearer to the one before us, by limiting *an admission of assets* made by him through mistake. *Dagley* v. *Crump*, 1 Dick. 35. On the other hand, where *an attorney* had, as respondent to a bill, admitted in his answer that he had certain documents in his possession, and desired permission to file a supplemental answer retracting his admission, permission was refused, on the ground that such an applicant must have been

aware of the consequences of his admission, and that, as there was nothing in the shape of written document to support the retraction, its truth could not, as in most of the cases in which amendments had been permitted, *be put beyond doubt.* *Greenwood* v. *Atkinson*, 4 Sim. 54, 63, 64; 6 Eng. Cond. Ch. R. 54, 63, 64. In fine, without detailing more of the adjudications upon this subject, it will be found in the language of Chancellor Kent in *Bowen* v. *Cross*, 4 Johns. Ch. R. 375, that chancellors proceed in the matter upon the idea "that the application ought to be *narrowly* and *closely* inspected, and a just and necessary case *clearly made out;*" being greatly swayed to grant the motion, by facts affording some probable reason to suppose, as from the haste in which the answer was made, or the like, that the answer is wrong by *mistake*, and that no *gross* negligence has been the cause of it, as well as by the fact, that there is such kind and degree of proof of the truth of what is proposed to be alleged by way of correction or addition, as places the truth of it beyond reasonable doubt. See remarks of Knight Bruce, V. C., in *Swallow* v. *Day*, 2 Collyer, 33 Eng. Cond. Ch. R. 133, and see that case and cases cited in it. See *Greenwood* v. *Atkinson*, sup., remarks of Sir Launcelot Shadwell, V. C. of England, and cases cited; and see *Smith* v. *Babcock*, sup., and cases cited.

The tests proposed by Mr. Justice Story, in the case last cited, for giving leave to amend an answer, are, that the reasons must be satisfactory,—the facts highly *probable*, if not *certain*, and *material* to the controversy,—that there must have been no *gross* negligence,—and that the mistakes must have been ascertained since the putting in of the answer. *Smith* v. *Babcock*, 3 Sumn. 586.

Applying these tests to the motion before us, the reason for the omission in question by the solicitor, from his illness and the hurry in which, unfit as he was from illness, to prepare the answer to meet the urgency of the counsel for the complainant, is satisfactory to us. It is clearly no case of *gross* negligence, under such circumstances of combined illness and haste to make up for delay caused by illness. That the application was not made before, is accounted for by the fact that the answer has been in the possession of the counsel for the complainant until.

just before the commencement of this term, so that the solicitor for the defendant did not until that time see it, and discover the omission he had made ; and it appears that on the first day of the term, he gave notice of this motion, and of the fact which he proposed to add in his answer. These facts, coupled with the affidavits before us, prove also that the omission was not discovered until after the answer was put in, and, indeed, not until just before this application was made. With regard to the fact itself, it is vitally material to the controversy involved in this suit; and what is of the last consequence, is admitted by the counsel of the other party to be true, he having used this very fact before this court, to the knowledge of the judges then present, in another branch of the litigation which has sprung up out of the affairs of the late firm of Gardner & Brother. But if this were not so, it is a fact, the making of a certain deposit in bank, capable of proof, and which can only be proved by the officers of a bank, and by the entry or entries in the books of a bank, made at the time of the deposit. Again, though it materially alters the posture of the case, it is perfectly consistent with what the answer already states; adding a *new* defence only to that before alleged in the answer. Under these circumstances, there being, as we have seen, no other remedy for the mistake, but the granting of leave to file a supplemental answer adding the statement of the fact omitted, we deem that substantial justice requires us, notwithstanding the late stage of the cause in which the motion is made, to grant the leave asked of us. With regard to the stipulation of April 21, 1856, " that the defendant shall be permitted to amend his answer, *if deemed necessary*," the language certainly does not confine the leave to amend to what may be necessary to meet the new allegations of the amended bill; but, on the contrary, places the right of deciding upon the amendments necessary, entirely with the counsel for the respondent. Without doubt, however, if a party would avail himself of such a stipulation, he must do so within a reasonable time, and not allow the cause to proceed in proof, under the idea that the answer is what it is intended to remain. We therefore give to the stipulation but very little weight in this motion, except so far as it countenances the statement in

Mr. Blake's affidavit, that the answer was drawn under such circumstances as to lead him to fear that amendment of it might be necessary. As to the stage of the cause in which the motion is made, there seems to be no limit to the time within which such an application may be granted, so that the plaintiff may be placed in the same situation that he would have been in had the answer been correct or full enough, at first. 2 Danl. Ch. Pl. & Pract. 916. By the English practice, as appears from the case of *McDougall* v. *Purrier*, 4 Russ. 4 Eng. Cond. Ch. R. 486, 487, the motion comes too late, after the cause is set down for hearing, and for the reason stated by the chancellor, " that it was impossible to put the plaintiff in the same situation as he would have been in, if this defence had been stated on the record in due time." This cause, however, has in no sense, under our practice, been set down for a hearing. So far from it, the counsel for the respondent gave notice, before the commencement of the term, that his testimony was not closed, or that he *might* wish to take further evidence ; and, on the first day of the term, gave notice of this motion. We have no special rule of our own, applicable to the subject of the amendments of answers ; and in such case have expressly adopted the rules in equity established by the supreme court for the courts of the United States. The sixtieth of these rules implies, beyond question, that an answer may be amended " in material matters, as by adding *new facts or defences*, or qualifying or altering the original statements," upon " special leave of the court or of a judge thereof, upon motion and cause shown, after due notice to the adverse party, supported, if required, by affidavit," not only after replication filed, but even after the cause is set down *for a hearing upon bill and answer.*

This cause has proceeded much further than an answer, and proofs may have been taken, or omitted to be taken, which, had the answer been as it is to be when amended, would have been omitted, or would have been taken, by the complainant. To place the complainant in the same condition as he would have been in had the answer been full at first as to all defences, the time for taking proofs must certainly be extended, and the commission opened for that purpose, if the time limited by the rules

has expired.   The terms, too, as to costs of the *suit* as well as of the *motion*, upon which the application is granted, must be reserved until the hearing, for the purpose of enabling us to do justice to the complainant, when granting this application of the defendant.   We can then better, and with more ease, ascertain what the complainant has suffered in the matter of proofs taken, or to be taken, from the omission of the answer, and act more advisedly than we can now do, as to the costs of those proofs.